UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE DOE, as Relator for the UNITED STATES OF AMERICA, STATE OF ILLINOIS, AND STATE OF INDIANA, <br><br> Plaintiffs, <br><br> vs. <br><br> HOUCHENS INDUSTRIES, INC., <br><br> Defendant. | 1:13-cv-00196-RLY-MJD |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS**

Relator brings *qui tam* claims on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A) & (B), and the related false claims acts of the State of Indiana and the State of Illinois. Relator alleges that Defendant, Houchens Industries, Inc., violated the FCA by misrepresenting its usual and customary drug prices on standardized claim forms and over-charged Medicare Part D and the Indiana and Illinois Medicaid programs for generic drugs sold at retail. Houchens now moves to dismiss Relator's Complaint as it pertains to the United States and the State of Illinois[1]

---

[1] After an investigation into the facts of the case, the United States and the State of Illinois declined to intervene. Accordingly, the Relator's Complaint remains the operative pleading with respect to the alleged losses suffered by the federal Medicare Part D program and the Illinois Medicaid program.

1

for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is **DENIED**.

## I. Background

In 2008, Houchens purchased Buehler's Buy-Low and its pharmacies from Buehler Foods, Inc., and thereafter renamed the stores "Hometown IGA." (Complaint ¶ 10). Houchens currently operates 10 Hometown IGA's in Indiana and one in Illinois. (*Id.*).

Shortly after it acquired Buehler's Buy-Low, Houchens noted the popularity of Wal-Mart's discount program for generic pharmaceuticals, and decided to start its own, naming it the "IGA Hometown Pharmacy Rewards Program." (*Id*. ¶ 46). The Rewards Program was originally called "500 for $5," meaning a cash-paying customer who enrolled in the Program would be charged $5.00 for the 500 generics on the Program list. (*Id*. ¶ 47). According to the Complaint, as part of the enrollment process, Relator was instructed to collect a small fee from the enrollees and give them a gift card in the same amount to offset the fee. (*Id.*). Under the Rewards Program, claims went through an online discount plan called Medical Security Card ("MSC"). (*Id.*). MSC then charged Houchens $1.00 for each claim. (*Id.*).

Houchens later modified the Rewards Program to 400 generics for $3.99 for a 30-day supply, $6.99 for a 60-day supply, and $9.99 for a 90-day supply, and eliminated the use of MSC. (*Id*. ¶ 48). Hometown IGA Director, Glen Millikan, RPh, and Assistant Director, Leslie Bidwell, instructed Relator and the other pharmacy staff that when billing Medicare Part D and other third parties for a generic drug on the Program list, she

2

was not to change the price plan to the discounted Program price unless the customer's co-pay exceeded $3.99. (*Id*. ¶ 49). According to Relator, Houchens overcharged the plaintiff governments by seeking reimbursement for the generic drugs in an amount in excess of the "usual and customary" ("U&C") price it typically charges its cash paying customers – *i.e.*, the Rewards Program price. (*Id*. ¶ 49). Relator alleges that this practice violates the Federal False Claims Act, 31 U.S.C. § 3729 *et seq*.; the Illinois Whistleblower and Protection Act, 740 ILCS 175/1 *et seq*.; and the Indiana State False Claim and Whistleblowers Protection Act, Ind. Code § 5-11-5.5-1 – 5-11-5.5-18.

## II. The False Claims Act

Under the federal FCA, "'private individuals . . . referred to as 'relators,' may file civil actions known as qui tam actions on behalf of the United States to recover money that the government paid as a result of conduct forbidden under [the False Claims] Act.'" *United States ex rel. Garbe v. Kmart Corp*., 968 F. Supp. 2d 978, 982-83 (S.D. Ill. 2013) (quoting *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011)). The FCA imposes liability upon anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) & (B). Because the elements of the Illinois Whistleblower and Protection Act, 740 ILCS 175/3, are virtually identical to the FCA, the court will analyze them together.

## III. Standard of Review

3

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the court construes the allegations of the complaint in the light most favorable to the plaintiff, and all well-pleaded, non-conclusory, factual allegations in the complaint are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Taken in this light, the complaint's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has a facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 9(b) requires an elevated pleading standard for fraud claims, such as the claims asserted in this action. Under the heightened pleading standard, a relator must state with particularity the circumstances constituting fraud – *i.e.*, the "who, what, when, where, and how." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). That said, "Rule 9(b) does not require a relator to plead evidence and is to be read in conjunction with [Rule 8], which requires a short and plain statement of the claim." *United States ex rel. Garbe*, 968 F.Supp.2d at 982.

IV. **Discussion**

Houchens moves to dismiss the Relator's Complaint as it pertains to the United States and the State of Illinois for two reasons. First, the Rewards Program price for generic drugs is not the U&C price the Houchens' Hometown IGAs charge to members

4

of the public; therefore, Houchens did not file false claims to the plaintiff governments. Second, the Relator's Complaint fails to allege knowledge with specificity.

### A. Usual and Customary Price

The Complaint alleges that pharmacies that enter into Medicaid provider agreements, like the Hometown IGAs at issue here, may not bill Medicaid more than the U&C price for a particular drug. The Illinois Department of Healthcare and Family Services ("HFS") publishes a Pharmacy Provider Handbook which requires pharmacy providers to bill Medicaid services at the U&C price. (Complaint ¶ 17). HFS defines the U&C price as "the amount a provider would charge cash customers for a prescription, exclusive of sales tax." (*Id*. and Ex. 1, March 24, 2011 letter from the Illinois Department of Healthcare and Family Services, citing and quoting the Illinois Pharmacy Provider Handbook, available at http://hfs.illinois.gov/assets/p200.pdf. *See also* Ill. Admin. Code Tit. 89 § 140.12 (providers must "make charges for the provision of services and supplies to recipients in amounts not to exceed the provider's usual and customary charges and in the same quality and mode of delivery as are provided to the general public")). Similarly, pharmacies who contract with Medicare Part D plan sponsors are required to price prescriptions at the contracted rate or the U&C rate, whichever is lower. (*Id*. ¶ 45; see also *id*. ¶ 47 (citing 42 U.S.C. 1320a-7(b)(6) (prohibiting requests for payment "substantially in excess of such individual's or entity's usual charges . . . .")). Medicare generally defines the U&C price in terms of what the "usual cash customer" would pay. (*Id*.). In its motion, Houchens does not contest these definitions.

5

According to Houchens, the special pricing it offers the members of its Rewards Program is not the U&C price because that price is offered only to those who enroll in the program; it is not offered to the general public. This argument was raised and rejected in *United States ex rel. Garbe v. Kmart Corp.*, -- F.Supp.3d -- , 2014 WL 5819374 (S.D. Ill. Nov. 7, 2014). There, the court found on summary judgment that the "members of Kmart's generic discount programs are part of the 'general public' (as opposed to a private group or club) because of the open eligibility of the programs, *i.e. anyone* is eligible to join the program." *Id*. at *11 (emphasis in original). In addition, the court found that "Kmart's argument that its enrollment process took customers outside of the general public to be skeptical due to the basic demographic information that was required to enroll (which included name, date of birth, address), as well as the rudimentary (and sometimes verbal) enrollment process that actually took place." (*Id*.).

Similarly here, Relator alleges that, although there was a small fee to enroll, she and other members of the pharmacy staff were instructed to give the enrollee a gift card in the same amount. (*Id*. ¶ 47). She also alleges that she was never provided any instructions as to how to enter the enrollment fee into the computer, and that eventually, the fee was done away with completely. (*Id*. ¶¶ 47, 51). One could reasonably infer from these allegations that, like the enrollment process in *Garbe*, the enrollment process in the present case was rudimentary and open to anyone who filled prescriptions at the Hometown IGA pharmacies. The court therefore finds that for purposes of this motion to dismiss, Relator's allegation that the Rewards Program price is its U&C price for Medicare Part D and Illinois Medicaid for reporting purposes, is plausible.

### B. Knowledge

Houchens next argues that there exists no law or regulation which would provide Houchens with knowledge that Medicare or Illinois Medicaid intended the Rewards Program to be Houchens' usual and customary charge. Thus, Houchens could not have been placed on notice that its conduct was unlawful.

For a person to act "knowingly" under the FCA, the person must have actual knowledge of the information, or act with deliberate ignorance or reckless disregard of the truth or falsity of the information. *U.S. ex rel. A+ Homecare v. Medshares Mgmt.*, 400 F.3d 428, 451 (6th Cir. 2006) (citing 31 U.S.C. § 3729(b)). Here, Relator alleges that Houchens pharmacy personnel were instructed by Milliken and Bidwell not to apply the $3.99 price to prescriptions for government beneficiaries unless the co-pay exceeded the $3.99 Program price. By doing so, Houchens ensured that its Medicare Part D and Medicaid beneficiary customers would always pay the Rewards Program price or less, but the government, as third-party payor of the majority of the cost, would never receive the benefit of the U&C price offered to the vast majority of its customers. The court finds these allegations are sufficient to support a reasonable inference that Houchens acted with reckless disregard for the truth when it used a higher list price as its purported U&C price when billing the United States and the State of Illinois.

In conclusion, the court finds Relator sufficiently alleges a false claim. Relator alleges that Houchens consistently overbilled the plaintiff governments by reporting a price for its generic drugs that was higher than its U&C price. (*See id*. ¶ 49). Despite reporting this "fraudulent billing" to other Pharmacists in Charge, Relator was informed,

"Well, that is what we are supposed to do." (*Id*. ¶ 50). The Relator's Complaint also includes the content of the alleged false representations. (*See id*. ¶¶ 57-64 and Exs. 4-11 (showing examples of Houchens' computer billing records)). For example, Relator provides an example of a Hometown IGA billing Medicare Part D $7.76 for a generic medication (Meloxicam 7.5 mg) on the Rewards Program list rather than billing it the U&C price of $3.99. (*Id*. ¶ 57 and Ex. 4). The date of the prescription shows 6/9/2011. (*Id*.). Contrary to Houchens' assertions, the court finds that Relator's claim sufficiently details the "who, what, when, where, and how" of the "false claim."

## V. Conclusion

The court finds the Relator's Complaint states plausible claims for relief under the FCA and the Illinois Whistleblower and Protection Act. Accordingly, Defendant's Motion to Dismiss Relator's Complaint (Filing No. 73) is **DENIED**.

**SO ORDERED** this 9th day of January 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.